UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION


UNITED STATES OF AMERICA

VS.                          CRIMINAL NO. 3:18CR114HTW-FKB

DEVIN MODACURE




MOTION HEARING


BEFORE THE HONORABLE HENRY T. WINGATE
UNITED STATES DISTRICT JUDGE
AUGUST 29, 2018
JACKSON, MISSISSIPPI




APPEARANCES:

FOR THE GOVERNMENT:    MR. ABE MCGLOTHIN
                       MR. KEITH B. FRENCH

FOR THE DEFENDANT:     MR. DENNIS C. SWEET III
                       MR. DENNIS C. SWEET IV


REPORTED BY:  CHERIE GALLASPY BOND
              Registered Merit Reporter
              Mississippi CSR #1012

_____

501 E. Court Street, Ste. 2.500
Jackson, Mississippi  39201
(601) 608-4186

1          THE COURT:  All right.  Mr. McGlothin, call your case.

2          MR. McGLOTHIN:  Your Honor, we're before the court on

3    United States v. Devin Modacure, criminal number

4    3:18CR114HTW-FKB.  Your Honor, we're before the court for

5    motion hearings on motions that were filed by the government as

6    well as the defense.  The defendant is present in the courtroom

7    with his attorney, the Honorable Dennis Sweet.

8          THE COURT:  All right.  Good morning, Mr. Sweet.

9          MR. SWEET III:  Good morning, Your Honor.

10         THE COURT:  And you're here with your client?

11         MR. SWEET III:  We have the other Mr. Sweet too.

12         THE COURT:  Right.  Good morning to you.

13         MR. SWEET IV:  Good morning, Your Honor.

14         THE COURT:  All right.  Now, then, on these motions

15   that are before me -- oh, and counsel identify for the

16   record --

17         MR. McGLOTHIN:  Your Honor, seated with me is

18   Assistant United States Attorney Keith French.

19         THE COURT:  All right.  Good morning to you.

20         MR. FRENCH:  Good morning.

21         THE COURT:  All right.  Now, what is the government's

22   notion about what motions to take up first?  I can take them up

23   in the order in which they were filed or in some other order if

24   that's more appropriate.  So what's the government's

25   contention?

1          MR. SWEET III:  May I speak to the government?

2          THE COURT:  Yes, go right ahead.  You all can have a

3    seat.

4       (Off-the-Record Discussion)

5          MR. SWEET III:  Thank you.

6          THE COURT:  All right.  Go ahead.

7          MR. McGLOTHIN:  Your Honor, we'll take up the motion

8    to compel that was filed by the defense first.

9          THE COURT:  Okay.  All right.  Mr. Sweet, are you

10   ready to go forward?

11         MR. SWEET III:  Yes, Your Honor.  Your Honor, I

12   believe the government and I have reached an agreement on this

13   motion.

14         THE COURT:  Okay.

15         MR. SWEET III:  I believe he subpoenaed the records

16   that I was requesting from the City, and the City would produce

17   them to him.  He didn't have an opportunity to review and

18   redact and produce them to me.  The only thing I'd ask the

19   opportunity after I'm produced with redaction that if I think

20   it's important that I have an opportunity to file a motion for

21   in camera inspection of all of them, all of the records.

22         THE COURT:  Okay.  Mr. McGlothin, is that the

23   agreement that the two of you have reached?

24         MR. McGLOTHIN:  Yes, Your Honor, as it relates to the

25   answer on the affairs reports as well as the records that were

1  requested under bullet point 3 and 4, the police records from

2  the shooting earlier that day.  The government will provide

3  those documents to the defense.

4         Your Honor, the government will provide the documents,

5  but we will again, Your Honor, hold to our ability to make any

6  objection to those documents.  We do believe that we will be --

7  that we are required to turn those over to the defense;

8  however, the government has not stating that those documents

9  will, in effect, be admissible in trial.  But we do agree we

10 will turn those documents over.

11        THE COURT:  Okay.  Now, can you prepare an order to

12 that effect and have it approved by Mr. Sweet?

13        MR. McGLOTHIN:  Yes, Your Honor.

14        MR. SWEET III:  Your Honor, may I make a request?  I

15 don't want to overstep my bounds with the government.  They've

16 talked to the City about these records.

17        THE COURT:  Okay.

18        MR. SWEET III:  I've had a lot of dealings with the

19 City of Jackson and the City Attorney's office, and obtaining

20 things and moving forward, an old country saying, it just ain't

21 easy.  The city's kind of difficult to deal with.  I don't know

22 if the government -- we put a time on the City or the

23 government have the court issue an order.

24        But my experience with them is they take a long time.

25 They go through all kind of processes, and the City council and

1  all this.  And then they turned this case over.  I don't

2  understand why they wouldn't have turned all the information

3  over to ATF.  It's not the government because the government is

4  imputed with their knowledge.  I don't know if the government

5  wants to wait and see whether they speedily comply with this

6  subpoena or have an order from this court to produce that

7  information to the government.  That's the only thing.  I may

8  be overstepping my grounds, but the government --

9          THE COURT:  Let me see what Mr. McGlothin's experience

10  on this matter is.  Mr. McGlothin, have you had a contact

11  person on this matter?

12          MR. McGLOTHIN:  Your Honor, I've been working through

13  the ATF agent on this case who was has been working in

14  conjunction with the Jackson Police Department.  And so far all

15  the documents we requested from the Jackson Police Department

16  they have provided it.

17          But as related to this internal affairs report, at

18  this time -- at the time in which this incident took place, JPD

19  they were conducting their own internal affairs investigations.

20  So those reports would be -- that would be something that

21  Jackson Police Department would have to turn over, and the

22  response that we received was that they would turn the

23  documents over but they needed to allow the City attorney's

24  office to review all of the documents that they intended to

25  turn over before they turned it over to us.

1          I, of course, intend -- I've spoken to Mr. Sweet and

2    we don't intend for them to redact anything as that would be

3    the government's duty to redact anything that we see fit.  But

4    the JPD officers -- the JPD management stated that they would

5    have to turn -- that they would have to you go through the City

6    attorney's office before they could turn those documents over.

7          THE COURT:  Did they give you any time frame?

8          MR. McGLOTHIN:  I was not given a time frame.

9          THE COURT:  In the past when you have worked with them

10   on matters such as this, how long has it taken?

11         MR. McGLOTHIN:  Your Honor, this would actually be my

12   first time having to deal with the City attorney's office in

13   turning over an internal affairs report.

14         THE COURT:  Okay.  And has your office before -- not

15   you but anybody in your office sought internal affairs reports,

16   to your knowledge?

17         MR. McGLOTHIN:  I have no knowledge of that, Your

18   Honor.

19         THE COURT:  Okay.  So you did not ask how long it

20   might be before the City would surrender the documents?

21         MR. McGLOTHIN:  We asked the Jackson Police

22   Department, and they stated that they would turn their

23   documents over but they were not certain how long -- how long

24   it would take the City attorney's office to review those

25   documents and then turn them over to us.

1          So I think at this point it rests on the City

2    attorney's office and I can make contact with them to see how

3    long it would take them to respond to the government subpoena.

4    I would like to believe that it shouldn't be a problem.  But if

5    it is, I would certainly come back before the court and let the

6    court know that we're having issues and have the court to get

7    involved, but I'd like to believe that it shouldn't be an

8    issue.

9          THE COURT:  Have you been told how many documents

10   we're talking about?

11         MR. McGLOTHIN:  No, Your Honor, I have not.

12         THE COURT:  Could you reach out to the City and make

13   these inquiries?

14         MR. McGLOTHIN:  Yes, Your Honor.

15         THE COURT:  So that I would know whether I have to get

16   involved in the process?

17         MR. McGLOTHIN:  Yes, Your Honor.

18         THE COURT:  So could you do that and then submit a

19   letter to the court and also a copy of same to the defense to

20   educate us as to what the City is saying about this matter?

21         MR. McGLOTHIN:  Yes, Your Honor.

22         THE COURT:  Okay.

23         MR. SWEET III:  Your Honor, may I add one -- ask one

24   question?

25         THE COURT:  Okay.

1        MR. SWEET III:  It would be for the U.S. Attorney to

2    redact information or not turn over information.  It won't be

3    for the City attorney.  If they plan on reviewing it and

4    saying, We're going to give you this and not this and not this,

5    that would be a function that they shouldn't have.  That's

6    going to be the function of the young gentlemen here to do that

7    and have the records here.

8        I'm not saying they've got to turn them over to me.

9    He will make that determination, and then I can argue with the

10   court whether or not if I think it's something I would be

11   entitled to.

12       But for them to take out information and not produce

13   it to the U.S. Attorney -- which I don't know why they

14   wouldn't.  They're part of the government, and this gentlemen

15   then would redact it or whatever in this court system.  Any

16   other kind of thing could drag this production out for a while.

17   It would be easier for the City just to give it to them and let

18   them redact it and let the court do the in camera inspection.

19       THE COURT:  Isn't the City involved in some litigation

20   concerning this matter?

21       MR. SWEET III:  Your Honor, we did do a notice of

22   claim early on.  We haven't filed a lawsuit at this point, a

23   1983 or anything.  The statute has not run, but we don't have

24   any information from the City -- they never even contacted us.

25   They never said anything.  The only thing we got was a warrant

1    for his arrest.

2            So if I had civilly, I could have had some information

3    at this point, but I did not file the civil lawsuit at this

4    time.  So we don't have anything from the City -- no response

5    to the civil lawsuit, no nothing, just nothing.

6            THE COURT:  Okay.

7            MR. SWEET III:  I'm just afraid -- Your Honor, I

8    understand -- I have been before the court and I know this

9    court when it sets a trial date like it did the other day, this

10   court plans on going and it takes some -- it takes some effort

11   to get this court not to go.  And so I don't want to be in a

12   position where they are dribbling them stuff and we have

13   another court date.

14           THE COURT:  Okay, Mr. McGlothin, let's move -- like I

15   said before, I want you to contact the City and try and get

16   some informal understanding as to the situation here.  And if

17   it appears the court needs to get involved, let me know as soon

18   as possible so that I can issue the appropriate orders on the

19   matter or for that matter have the appropriate hearing on the

20   matter because if there is some contention that the City should

21   not surrender all the documents pursuant to your subpoena, then

22   I need to have a hearing on your subpoena and any objections

23   that the City might have and whether those objections are

24   appropriate under the circumstance.

25           So let the City know that we're quite concerned about

1     the documents, and if there's some need to submit the documents

2     under any kind of nondisclosures of some points or protective

3     order, ask about that question too so then I'll have an idea on

4     what the city's position is on this whole matter.  Okay?

5              MR. McGLOTHIN:  Yes, Your Honor.

6              THE COURT:  Get that to me as soon as you have an

7     answer.

8              MR. McGLOTHIN:  Yes, your Honor, I will.

9              THE COURT:  But I will certainly expect an answer in

10    the next two days though.

11             MR. McGLOTHIN:  Yes, Your Honor.

12             THE COURT:  Before Friday, at least before the close

13    of business on Friday.

14             All right.  Let's go to the next motion.  Is the next

15    motion pretrial detention?  Is that the next one?  There was a

16    motion to compel discovery, motion for reconsideration of

17    pretrial detention, and then there's a motion in limine.

18             MR. SWEET III:  I believe the court decided that

19    motion for reconsideration.

20             THE COURT:  Okay.  So then we're now at the motion

21    for -- motion in limine.

22             MR. SWEET III:  Yes, this would be our last motion,

23    Your Honor.

24             THE COURT:  That's your motion?

25             MR. SWEET III:  That's the government's motion.

1          THE COURT:  All right.  Then, Mr. McGlothin, your

2      motion.

3          MR. McGLOTHIN:  Yes, Your Honor.  Your Honor, I don't

4      want to hastily skip through Mr. -- the motion filed by the

5      defense and to preclude our argument from some things that we

6      had.  As relates to bullet point six where it's outlined prior

7      complaints against the JPD officers, Your Honor, the government

8      will contend that those are documents that are in essence

9      *Giglio* related and they will be provided to the defense in

10     accordance with the discovery orders.

11         THE COURT:  Say that again, now.

12         MR. McGLOTHIN:  The documents contain -- that are

13     requested as relates to -- under heading 6 of the defense

14     order, prior complaints against the JPD officers and any

15     dishonesty or misconduct that they would like to -- that they

16     would like for the government to disclose, the government would

17     contend that those are documents that those are Giglio

18     documents and that they will be provided in accordance with the

19     discovery order which gives the -- which obligates the

20     government to provide those documents within five days of the

21     trial.

22         THE COURT:  You have those documents?

23         MR. McGLOTHIN:  I do not have them at this moment,

24     Your Honor.  We're going to be obtaining those from the Jackson

25     Police Department also.  But we do not have them -- I do not

```
1    have them at the moment.

2               THE COURT:  Okay.

3               MR. McGLOTHIN:  I'm not certain as to -- aside from

4    the shooting, I'm not certain as to whether there are any other

5    acts related to these officers at all, but we're going to -- I

6    do plan to look into it and to have Jackson Police Department

7    and the HR department provide us with those documentations as

8    well as to question the officers about any act of dishonesty as

9    we do in every case.

10              And again those are -- those would be required -- the

11   government's required to turn those over within the five days.

12              THE COURT:  Response from the defense.

13              MR. SWEET III:  Your Honor, I believe that comports if

14   those documents are produced -- if he wants to go the five days

15   out, that's fine.  We'll get them within five days of trial we

16   are entitled -- he just has to get them from the City.  The

17   City has to produce them to them.

18              THE COURT:  All right.  In that order that I asked you

19   to submit to me, place that in the order too.  All right?

20              MR. McGLOTHIN:  Yes, Your Honor.

21              THE COURT:  Then finally, with regard to the matter

22   rof reconsideration of pretrial detention, put down -- not

23   down, but include in the order that this matter is now moot

24   because it has been addressed previously because it's still

25   showing up on the motion sheet.
```

1          So I have on my motion sheet Docket Number 15, Motion

2    for Reconsideration of pretrial detention, Docket Number 22,

3    Motion to Compel Discovery, and Docket Number 21, Motion in

4    Limine.

5          So then Mr. McGlothin, these are the only three I have

6    on my motion sheet, and the ordered that you are to submit to

7    me after you have submitted it to the defense for the defense's

8    approval of the order are the only three that I have on here.

9    Now, are there any others, any other motions?

10         MR. McGLOTHIN:  No, Your Honor, other than addressing

11   what's contained within the motions that have been filed.

12         THE COURT:  What do you mean?

13         MR. McGLOTHIN:  For example, I also want to take up

14   what's been argued in the defense's motion to compel discovery

15   and their conclusion.

16         THE COURT:  Okay.  And what's your issue with the

17   conclusion?  You said that the government has argued and stated

18   over and over this is not a police shooting case and they don't

19   want to try such a case, and you're contending that a -- well,

20   why don't you go ahead and state what it is here.  I'm looking

21   at your conclusion, but go ahead.

22         MR. McGLOTHIN:  Your Honor, this is the defense's --

23   this is the conclusion of the defense and not the government,

24   and the defense is alleged -- is stating that we, the

25   government -- that we have argued that this is not a police

1   shooting case and that they have the right to try the case from

2   their viewpoint and that it is relevant whether this shooting

3   was improper and the lengths that the officers would go in

4   justifying this as a legal shooting.

5          And, Your Honor, the government contends that this is

6   simply a felon in possession case that as it relates to the

7   shooting that the shooting that was involved has no bearing on

8   the elements that the government has to prove.  The government

9   only has to prove three elements in this case, Your Honor, and

10  that is that the defendant knowingly possessed a firearm as

11  charged, that before the defendant possessed the firearm he had

12  been convicted of a crime that's punishable by a term of

13  imprisonment in excess of one year, that is, a felony offense,

14  and that the possession of the firearm was in or affecting

15  commerce.

16         As relates to whether there was an officer-involved

17  shooting, Your Honor, the government contends that that's

18  completely irrelevant as to whether the defendant actually

19  possessed a firearm, and that has been the government's

20  contention since the beginning of this case.

21         Your Honor, the government believes that the defense

22  wants to try an officer-involved shooting, that that's a civil

23  matter and they can proceed to go forward with the civil case,

24  and they can seek whatever remedy that they can before this

25  court on another court as relates to a civil judgment against

1    the City.

2           But the government has only indicted this defendant

3    for being a felon in possession of a firearm.  And we believe

4    that any mention of believed involved shooting and trying to

5    delve into whether this was a legal justifiable shooting is

6    completely irrelevant as to whether this defendant possessed a

7    firearm and would do nothing but attempt to elicit sympathy

8    from the jury, and it would simply cloud the issues as to what

9    the issue is in this case and the defendant has been indicted

10   for.

11          As such, Your Honor, the government believes that the

12   defense should be precluded from going into the shooting as

13   relates to this case because that's not what the government's

14   pursuing.

15          THE COURT:  What's the government's proof on knowing

16   possession of the firearm?

17          MR. McGLOTHIN:  Your Honor, the -- there were two

18   officers -- there were officers who actually approached this

19   defendant and saw what appeared to be a firearm on him.  As

20   they were attempting to pat him down, they asked to do a *Terry*

21   pat of the defendant.  At that point in time the defendant

22   began to run, and he ran into a house which was behind the

23   house where he was initially standing.  And once officers were

24   able to apprehend him, they did, in fact, find a weapon on him.

25   The government --

1          THE COURT:  Found a weapon on -- on him?

2          MR. McGLOTHIN:  On the defendant, Yes, Your Honor.

3          THE COURT:  And there were two officers?

4          MR. McGLOTHIN:  There were three officers initially.

5    Two officers approached the scene.  Two officers were right

6    behind him attempting to apprehend him, and another officer

7    came up shortly thereafter.  But the initial contact that they

8    made with the defendant where they -- where one of the officers

9    alerted them that there was a weapon on the defendant.  There

10   were three -- a total of three officers present at that time.

11         THE COURT:  Okay.  So those three officers are on your

12   witness list?

13         MR. McGLOTHIN:  Yes, Your Honor.

14         THE COURT:  And those three officers are prepared to

15   testify, in your estimation, that the defendant possessed this

16   firearm?

17         MR. McGLOTHIN:  Yes, Your Honor.

18         THE COURT:  And what type of firearm are we talking

19   about?  We don't need serial number and all of that, but is it

20   a pistol or is it a rifle?  What are we talking about?

21         MR. McGLOTHIN:  Your Honor, it's a pistol.  It was a

22   Glock model 2240 caliber pistol.

23         THE COURT:  Okay.

24         MR. McGLOTHIN:  That was loaded with 14 rounds of 40

25   caliber ammunition.

1          THE COURT:  All right.  Thank you.  Let me turn to the

2    defense.

3          MR. SWEET III:  Yes, Your Honor.

4          THE COURT:  Mr. Sweet, your client has elected to go

5    to trial and, therefore, there's a plea of not guilty.  Is that

6    correct?

7          MR. SWEET III:  Yes, Your Honor.

8          THE COURT:  So there's a plea of not guilty to the

9    possession.

10         MR. SWEET III:  Yes, Your Honor.

11         THE COURT:  And so is it your contention then that the

12   three officers are not telling the truth about the possession

13   of the firearm on the body of your client?

14         MR. SWEET III:  Yes, Your Honor.

15         THE COURT:  Do you have a theory that you can share

16   with the court at this point?

17         MR. SWEET III:  Yes, Your Honor.

18         THE COURT:  What's your theory?

19         MR. SWEET III:  The officer appeared that morning, and

20   they say there were a number of people out there.  This little

21   house where he was, he was on his way to work.  He had to be at

22   work at 4.  He stopped by this little house.  It's a table out,

23   and they usually over in this area, six or seven, eight people

24   hanging around out there.

25         He went over there.  He wasn't -- he stopped by to

1   holler at his friend before he went to work.  We're going to

2   have -- I've got to go get the witnesses' name, the people from

3   his job.  He never missed.  He was there.  He was a cook at the

4   Pelican Cove.

5       While he was there, police pulled up at this location,

6   and it was a number of people.  It wasn't just him, wasn't just

7   a friend.  There's a little card table out there.  They play a

8   little music.  There was a number of those people out there.

9       They started walking up to approach other people, not

10  just him, a lot of people.  He didn't feel comfortable because

11  he was a convicted felon.  He was on paper.  And he said, *I*

12  *need to remove myself from here* because if anything came up

13  drugs, guns, anything comes up, he potentially is violated.

14      And so he started moving a fence.  He started moving

15  toward the fence and leaving.  We had one statement from an

16  officer saying he saw him left.  This is new about the patting

17  him down.  I don't think -- I think one officer said they

18  patted him down, one officer said they saw him leaving.

19      The court heard the testimony from the ATF agent where

20  he -- the statements said one thing and he said he interviewed

21  him and he changed.  It's not the same.

22      As he was leaving, the officers ordered him to stop.

23  He didn't stop.  They pursued him.  It wasn't that long of a

24  pursuit.  He was at the back of this house.  He went across the

25  street.  And when he hit that -- in his driveway, you could see

1  the officer shooting him -- shooting at him.  They hit him in

2  the back.  He was shot in the back, lower right back.  He fell.

3          And then, you know, they said it got to -- I was new

4  and in none of the reports do they say the gun was under him.

5  That's what I asked the ATF agent.  One report say he was over

6  by the garbage can.  One of them says he was under it.  But the

7  residents at the house are going to say that he didn't have a

8  gun.  They witnessed it.  They have video camera outside, and

9  they say they saw it and he didn't have a gun.  They're going

10  to say when he fell they were kicking him, screaming at him,

11  *We'll blow your MF'ing head off.  We'll do this and do that.*

12  And they saw him, arrested him and take him away.

13          They didn't know him, and they had the video.  So they

14  went across and asked the people, *Who was he, who was he*?  And

15  they contacted his mother and said, *Look, we have it on video*

16  *and we witnessed it.  They just shot your son down.*  They said,

17  *He had a gun.*  They say, *He didn't have a gun.*  That's going to

18  be our testimony.

19          THE COURT:  Who said he didn't have a gun?

20          MR. SWEET III:  These two witnesses, and I gave

21  witness statements from other people who were over on the scene

22  that said he didn't have a gun.  The statements of the officers

23  are inconsistent at best.  And, Your Honor, we just going to --

24  that's going to be our theory.  We're going to put the officers

25  to the test.  I don't think they can come in and say he had a

1  gun.  They are going to have to -- they have motivation.  The

2  court heard the testimony.  The first testimony -- and I'm

3  going to get the transcripts.  They say he ran.  When he got to

4  this driveway he turned, aimed a gun at them.  That's what they

5  say they dropped -- they didn't know they were being

6  videotaped.  They said they turned.  He aimed the gun at him

7  and they dropped him.

8        You see the videotape, that's not what happened.

9  That's why I want the statements.  The statements I've been

10  given have no statements of these officers.  The statements

11  I've been given are statements that -- summaries of other

12  officers of what these officers said and did.  They are not the

13  officers statements themselves.

14        I did not produce the video to the City.  I didn't

15  produce it to the news.  I didn't do anything.  I wanted him to

16  go ahead and do their internal affairs and give their

17  statements of how this happened.  I figured it would be

18  inconsistent, and the video is inconsistent.  I contend when

19  you see him running on the video on the shooting he doesn't

20  have a gun, and I've got witnesses that are going to say he

21  didn't have a gun.  Whether the officers were mistaken or what

22  happened, that's going to be what we have at this point.

23        THE COURT:  These -- so you have statements from these

24  witnesses.

25        MR. SWEET III:  Yeah.  I gave them two of them and I

1   talked to more that I didn't take statements from.  I didn't

2   have the names.  I told them I have got to go back out to that

3   community and get their names.

4          Dennis and I went out there.  We had several people

5   surround us and tell us, "*We were here.  We saw it.  He didn't*

6   *have no gun.*  He did take off running.  We're going to bring

7   them in.  Some of them don't -- some have records, some of them

8   don't want to come to court.  But I'm going to subpoena them.

9          This couple at the house where he was shot, I believe

10  the ATF agent went there to speak to him.  The husband or the

11  boyfriend said he didn't see it.  He didn't know nothing about

12  it.  And he called us and said they were out there and that

13  they said -- he said they said some derogatory stuff, but told

14  them -- he said he didn't want to talk to them.

15         The female who lives there, she's working.  She seems

16  to have a pretty good clean record.  She had video -- she's the

17  one at the house with the video and she's the one that went and

18  found the mother and she said she didn't see a gun.  That's

19  what she says to us.

20         We looked at the video they gave it to us.  The

21  mother -- she told the mother, *I've got the video*, and she gave

22  it to the mother, and that's how we got it.  It didn't appear

23  he had the gun.  It didn't -- surely didn't appear it occurred

24  the way the officer said.  I don't care how you spin it.  It's

25  not what the officer said.

1          The officer was running and shooting.  You can see him

2     waving the gun around.  They got a -- this other weapon

3     appeared.  There's nothing that ties it to him other than these

4     officers.  There's nothing that ties this weapon to him other

5     than these officers.

6          THE COURT:  When you --

7          MR. SWEET III:  It's a police weapon.  It came from

8     the state of Illinois police department.  So I don't -- I mean,

9     that's what the report says.  I don't now how you're going to

10    tie him to a weapon that comes from the police department from

11    the state of Illinois.  But that's where the weapon came from.

12         THE COURT:  All right.  Thank you.

13         MR. SWEET III:  Yes, Your Honor.

14         THE COURT:  Then I'll hold this motion in abeyance

15    until after the materials have been secured and submitted to

16    the defense when all of us can review it and then see whether

17    that information contains any information that would be

18    pertinent to this matter.  But as of right now, I'm not going

19    to make any final ruling, but I'm going to wait until we have

20    finished reviewing the documents.

21         So, Mr. McGlothin, with that, then, you understand

22    that the court is going to take this course of action on that

23    particular point.  Now, are there any other points that the

24    court needs to address?

25         MR. McGLOTHIN:  Your Honor, not that's been -- not

1    within the motion filed by the defense.

2            THE COURT:  Is there anything filed by the prosecution

3    that I need to take up?

4            MR. McGLOTHIN:  Yes, Your Honor.  There was -- the

5    government's filed its omnibus motion in limine and it's docket

6    number 21 filed on August 24, 2018.  And there were several

7    things that the government placed within this motion that we

8    wanted to go ahead and move to exclude prior to trial to

9    prevent any of these issues from actually coming up during the

10   course of the trial.

11           THE COURT:  All right.  Let's go through each one of

12   them.

13           MR. McGLOTHIN:  Your Honor, the first would be any

14   suggestion or accusation that a prosecutor or agent engaged in

15   misconduct.  If there are issues that the defense would like to

16   get into, Your Honor, we believe that the defense, of course,

17   should speak to the court outside the presence of the jury to

18   make sure there's a factual foundation for making such

19   statements.  So we just -- we'd like to make certain before any

20   of these statements are actually made in the presence of the

21   jury that the defense is made aware that they should approach

22   and that those issues should be brought to the court before

23   they are actually stated to the jury.

24           THE COURT:  All right.  Defendant's response, does the

25   government anticipate making any such suggestion?

1          MR. SWEET III:  Your Honor, not against the prosecutor

2     or the ATF agent.  That's -- if that's who this is addressing.

3     I've told the court where I plan to go with Jackson Police

4     Department.

5          THE COURT:  Okay.  It says here that the target of

6     this first motion in limine is towards the prosecutor or agent.

7     So you do not intend to --

8          MR. SWEET III:  At this point, I have no information

9     concerning the prosecutor or the ATF agent.

10         THE COURT:  Okay, then.  Mr. McGlothin, that motion is

11    granted.  That is -- but you had asked that it be handled

12    outside the presence of the jury, but he's saying that he does

13    not intend to pursue that.  So put that in the order.

14         MR. McGLOTHIN:  Okay.

15         THE COURT:  Okay.  Next, number 2, Mr. McGlothin.

16         MR. McGLOTHIN:  Your Honor, as it relates to -- the

17    government would like to preclude the defendant -- and the

18    government plans to do this but -- from mentioning the absence

19    of any particular person on the government's witness list or

20    the government's plan to call or not to -- or not to call

21    particular witnesses.

22         Your Honor, throughout the course of the trial the

23    government will see how the trial goes, and just because a

24    person may be on our witness list, those may be individuals

25    that we choose not to call and the defense should be precluded

1   from making statements as such -- making statements such that

2   the government had an opportunity to call this witness or that

3   witness and chose not to do such.  And the courts have found

4   that a jury could be confused if told that the government lists

5   a particular witness on his list but that person did not

6   testify.

7           And in addition, although the government, of course,

8   retains its burden of proof, no negative inference such as

9   speculation about what the witness might have said is permitted

10  based on the government's decision not to call a witness.  And

11  that's outlined in *United States v. Heard*, which is a Fifth

12  Circuit opinion from 2013.  And that court pretty much stated

13  that an adverse inference is not appropriate when the witness

14  is available -- it is equally available to both parties.

15          So in light of that, Your Honor, the government would

16  like to move that any statements pertaining to who we call or

17  do not call that they be -- that those are not allowed.

18          THE COURT:  Mr. Sweet?

19          MR. SWEET III:  I ask the court to hold this in

20  abeyance to see what the -- whether there are going to be

21  witnesses who aren't available to us.  I know for one thing,

22  there's one of the police officers that moved to Texas and I

23  believe he's beyond the subpoena power of this court right now.

24  I don't know it for sure, but that's what I've been told.

25          The government can get him so I'd ask the court to

1   hold that in abeyance.  If the officer takes the Fifth -- they

2   have immunity; I don't.  I ask the court to see how this plays

3   out.  It may very well be that I don't get any instruction and

4   nothing occurs but I think the court has to make that

5   determination after the trial.

6         THE COURT:  Well, what I'm going to do is grant the

7   motion but allowing leave to the defendant to reurge the motion

8   if circumstances change.

9         MR. SWEET III:  Yes, Your Honor.

10        THE COURT:  Next, number 3, criminal records.

11  Mr. McGlothin?

12        MR. McGLOTHIN:  Your Honor, as it relates to this,

13  just to ensure that the only certain criminal convictions be

14  used to impeach a witness and that the proponent of evidence of

15  certain old convictions must give reasonable written notice of

16  intent to use them, and so the government plans to do the same

17  thing as relates to the defense.

18        We have been provided some of the witnesses for the

19  defense, and they do have -- some of them or at least one for

20  sure does have a criminal history.  And so we do plan to

21  provide that to the defense, but we want to ensure that the

22  defense does the same for any witnesses that we list.

23        THE COURT:  I'll take this up at trial after I have

24  been advised of any criminal convictions concerning witnesses

25  and the parties' response to those convictions, that is whether

1  they still wish to call the witness and whether they are

2  contending that those criminal records would not be admissible.

3      So I will take that up once I see what the -- not what

4  but whether there are any convictions and what purposes that

5  these matters would be introduced.  The court is aware that, of

6  course, criminal convictions may play on the matter of

7  credibility, but there's -- but there also are some

8  restrictions on the utilizations of such.  So I can't rule in

9  the blind on that.  I have to wait until I see the actual

10  convictions and then understand the gravity or the direction of

11  the testimony of the witness.  So I'll hold this one in

12  abeyance.

13      MR. SWEET III:  Your Honor, may I ask if he's running

14  an NCIC on the witnesses I have given him, can I get a copy of

15  that NCIC?  I don't have that available to me.  I'll give him

16  the names if he's running -- I have no way to do that.

17      THE COURT:  Mr. McGlothin?

18      MR. McGLOTHIN:  Your Honor, I believe we've turned

19  over the NCIC as relates to the defendant.  I don't think we're

20  required to turn over NCIC as it relates to their potential

21  witnesses.  I think they are going to be his witnesses, and

22  they can question -- he can question them as to whether they

23  have a criminal history or not, but I don't think the

24  government's required to turn over NCICs on every defense

25  witness.  I think that's their responsibility.

1    THE COURT:  I need, Mr. Sweet, for you to identify

2    these witnesses.  And if you feel that they have criminal

3    records that need to be revealed to the defendant and that the

4    defendant is unable to determine what the criminal records are

5    through some reason, then you need to file an appropriate

6    motion on that.  Then I'll take it up later.

7    Go to the next one, Mr. McGlothin.

8    MR. McGLOTHIN:  Your Honor, as relates to number 4,

9    Your Honor, this is in essence stating that the defense be

10   precluded from providing any self-serving statements as relates

11   to this defendant unless this defendant takes the stand.

12   MR. SWEET III:  The court will have to rule on that at

13   trial what statements -- the circumstances under which

14   statements are made or whatever.

15   THE COURT:  Well, I don't know if he's made any

16   out-of-court statements that would be deemed exculpatory, but

17   ordinarily those statements would not be admissible.  So if

18   there is a change in that, then I need to hear at trial.  But

19   at the present time -- at the present, I will have to agree

20   with the motion.  The motion will be granted with leave to the

21   defendant to approach the court during the course of trial and

22   ask the court to reconsider with regard to some new approach on

23   it.

24   But as of right now, this seems to be a

25   straightforward matter and so, therefore, the matter is -- the

1    motion in limine is granted.

2              Let's go to number 5.

3              MR. McGLOTHIN:  Your Honor, mention of any disputes

4    over discovery that the government may have produced, just

5    making any reference to the government provided this or did not

6    provide that, simply trying to ensure that we stick to the

7    facts of the case, Your Honor.

8              THE COURT:  What you've asked is that any such

9    disputes be handled outside of presence of the jury.

10             MR. McGLOTHIN:  Yes, Your Honor.

11             THE COURT:  I'm going to grant that motion on that

12   basis that any such disputes will be handled outside the

13   presence of the jury.

14             Number 6.

15             MR. McGLOTHIN:  Your Honor, making any mention of

16   other persons who have or have not been charged in this or

17   other cases.  Particularly, Your Honor, as relates to this

18   being -- I think this goes back to that other issue of

19   involving the officers and whether the officers were charged or

20   not charged with having shot him or whatever the issues may be

21   arising of this, what the government contends is a civil

22   matter, but we don't think that any mention of persons who have

23   been charged in this case should be mentioned to the jury.

24   We've only charged this defendant here with being a felon in

25   possession and to make any mention whether the officers have

1    been charged with anything or not is irrelevant to the guilt or

2    innocence of this defendant.

3           THE COURT:  I'll have to carry this one with the

4    trial.  Number 7.

5           MR. McGLOTHIN:  Your Honor, this one pertains to any

6    argument that encourages the jurors to ignore the law and not

7    follow the court's instructions of otherwise violate their

8    oaths as jurors.  In essence what we're saying, Your Honor, is

9    to -- particularly as it relates to attempting to -- by the

10   defense to invoke the defendant's age, health, education, and

11   any injury sustained as a result of this incident or family

12   needs that are intended to invoke sympathy from the jury, and

13   the court have been clear in that one in *United States v.*

14   *Renaud* not be taken up.

15          The Second Circuit has also stated that they

16   categorically reject the idea that in a society committed to

17   the rule of law, jury nullification is desirable or the courts

18   may permit to it occur when it is within their authority to

19   prevent it.

20          Your Honor, we put this one in here because during the

21   course of the hearings that we've had, the defense has

22   continuously stated as to how this defendant has bullet -- has

23   a bullet in his back and that the bullet is lodged in his back

24   and that they paid, you know, thousands of dollars in medical

25   expenses as relates to this shooting, and the government

1   contends that those issues are completely irrelevant to whether

2   this defendant possessed a firearm or not and that they do

3   nothing but to attempt to elicit sympathy from the jury in

4   efforts to -- in efforts to get jury nullification.  So as

5   such, we believe that the defense should be precluded from

6   making mention of those things.

7           THE COURT:  Mr. Sweet, why wouldn't that be an effort

8   to invoke jury nullification?

9           MR. SWEET III:  Your Honor, he mentioned in the

10  hearing one of the factors the court can consider on pretrial

11  detention is health, condition.

12          THE COURT:  Well, that's on pretrial detention.

13          MR. SWEET III:  Right.  He mentioned that I had

14  mentioned it.  The reason I had mentioned it was because that

15  was specifically one of the areas the court looks at and

16  considers.

17          THE COURT:  But this is not an area that you wish to

18  explore in front of the jury?

19          MR. SWEET III:  Your Honor, these cases, I think,

20  mainly relate to jury instructions and whether you're going to

21  get a nullification.  The court instructs the jury about

22  sympathy.  As far as my arguments or anything, what I would ask

23  the court to do is as we always do is object in trial if you

24  think it's inappropriate and let the court rule.

25          I don't want to be -- I don't know every situation

1  that comes up or every argument I have made -- I mean, I've got

2  to get ready for trial.  I don't want to run afoul of the

3  court's order when I don't really -- it may be that I don't

4  really understand it.  He interprets that as sympathy or

5  something of that nature.

6          I've tried cases before this court before.  If you

7  object, this court rules.  I comply with the court's rulings.

8  I don't -- and I mean, I would agree these issues are about

9  jury instruction, jury nullification.  This court's going to

10  instruct the jury not to have sympathy and decide on basis of

11  sympathy those kind of things.  I don't want any court order

12  saying that anything that may touch on that violates the court

13  order.  I haven't -- that would be difficult for me and

14  restraining for me, Your Honor, in trying this case.  I think

15  the court can do like it always does is they object and this

16  court rules.

17          THE COURT:  Well, Mr. McGlothin, I'm going to agree

18  that matters of jury nullification are not appropriate for the

19  jury's consideration.  So -- but it's kind of hard just to make

20  a sweeping declaration as to what all falls within the embrace

21  of that prohibition.  So I'm saying as a general proposition

22  that matters that might touch on jury nullification are not

23  admissible.

24          Now, having said that, I need to call on you to tell

25  me what specifics there are and I need to hear from you during

1    the course of the trial or right before trial, if you have a

2    list of those things so -- that would touch on jury

3    nullification.  So if you can give me some specifics, then I

4    can make some rulings with regard to those specifics.

5    Otherwise, I'm going to stand on the general proposition and

6    wait until you give me those specifics so then I can speak to

7    the defense and say these matters are in the arena of jury

8    nullification and shall not be mentioned.  Okay?

9             MR. McGLOTHIN:  Yes, Your Honor.  I can certainly

10   provide that to the court.

11            THE COURT:  And also it's always a copy to Mr. Sweet

12   so he can make whatever objections he has to make.  Okay?

13            MR. McGLOTHIN:  Yes, Your Honor.

14            THE COURT:  Let's go to the next matter.

15            MR. SWEET III:  I agree with 8.

16            THE COURT:  You agree with 8, don't you, on plea

17   negotiations, et cetera?

18            MR. SWEET III:  Yes, Your Honor.

19            THE COURT:  That motion in limine is granted.  Number

20   9, potential punishment.  And, Mr. Sweet, do you agree with

21   that one too?

22            MR. SWEET III:  Yes, Your Honor.

23            THE COURT:  Okay.  Then the defense agrees with number

24   9 that's styled "Potential Punishment or Any Other Consequences

25   That Might Result From a Conviction."  Then the motion in

1   limine is granted.

2        Number 10.  The defense counsel's personal opinions of

3   or relationship with the defendant.

4        MR. SWEET III:  I would ask the court to -- if I say

5   something, let him object.  I don't know what he -- again, I --

6        THE COURT:  I'm going to carry that on with the trial.

7        MR. McGLOTHIN:  I will agree to hold that one until

8   trial, Your Honor.

9        THE COURT:  Pardon me?

10        MR. McGLOTHIN:  I will agree we can take this up

11   during the course of trial.

12        THE COURT:  Okay.  That's number 10.  Number 11, the

13   use of interview reports prepared by law enforcement to impeach

14   government witness.

15        MR. McGLOTHIN:  Your Honor, I think this is based on

16   the issues that, one, that Mr. Sweet brought up earlier.  And

17   he is correct that there are statements that were given by the

18   officers who -- two of the officers who were on scene, but

19   those were not statements that were actually prepared by those

20   officers.  There may be statements that are within the internal

21   affairs report that have been -- and, of course, the government

22   has not seen that report at this time, but there may be

23   statements that the officers gave during that time, but I

24   just -- we put this in here, Your Honor, because I think it's

25   common knowledge that these witnesses cannot be impeachment and

1    that's any potential witness cannot be impeached on statements

2    that were no prepared by them and were not of their own words

3    or having been adopted by them.

4           THE COURT:  Mr. McGlothin, I'm going to have to carry

5    that one to trial too because these witness statements may be

6    used as potential impeachment evidence after a witness has

7    already testified.  And if the witness has already testified,

8    then it might be fair game for the defense then to ask some

9    present witness reaction to testimony already provided.  So I'm

10   going carry it to the trial and see what the sequence is and

11   then also what specific information upon which the defendant is

12   relying to see if it is cogent.  If the defense attempts to use

13   any such information and you think it is not appropriate, then

14   you can ask for a sidebar.

15          MR. McGLOTHIN:  Yes, Your Honor.

16          THE COURT:  All right.  Let me go to the next one.

17          MR. McGLOTHIN:  Your Honor, this is to exclude

18   specific instances of good conduct or good character which are

19   irrelevant to the conduct charged in this indictment and

20   particularly whether the defendant is an otherwise law abiding

21   citizen is not probative of his conduct in connection with the

22   crime charged in this case.  And that's outlined in *United*

23   *States v. Cleveland* from the Eastern District of Louisiana

24   (1997).

25          THE COURT:  All right.  Now, tell me what evidence you

1   feel might be elicited on the defendant's good character.

2           MR. SWEET III:  After the court's pretrial hearing, I

3   want to hear this one.  I say after the court's pretrial

4   hearing in this matter and findings, I'd like to hear that too.

5           THE COURT:  All right.  Mr. McGlothin?

6           MR. McGLOTHIN:  Your Honor, I'm not aware of any

7   specific instances that they would like to delve into, but

8   during the course of our hearings Mr. Sweet has been quite

9   clever so I just wanted to stop this before we get -- before we

10  actually get before the jury.

11          MR. SWEET III:  I wasn't clever enough.

12          THE COURT:  Well, okay.  We can -- okay.  We can see,

13  but -- and if there is some inadvertent disclosure of some good

14  guy stuff, then I will instruct the jury that that's not to be

15  considered.  But if the prosecution is aware of any portending

16  effort to paint this defendant in a good citizenship light,

17  then that needs to be brought to the court's attention

18  immediately.  And I would agree with the defendant -- with the

19  government that any such testimony is generally inadmissible.

20          MR. SWEET III:  I would ask the court if I head that

21  way and don't realize it, stop me because I don't want the

22  court to rule I opened the door for something.

23          THE COURT:  Okay.  Well --

24          MR. SWEET III:  I don't plan on it.

25          THE COURT:  I won't be able to do it on my own, now.

1   So you'll have to sort of police yourself, you and cocounsel

2   about that.  But, now -- but if you run into that marsh, then,

3   you know, you might be attacked by some alligator over there

4   that you are hoping not to be so.  So --

5           MR. SWEET III:  I'm not meaning to laugh.

6           THE COURT:  I know.  But that's the ruling of the

7   court on the matter.  All right.  Okay.

8           MR. McGLOTHIN:  Yes, Your Honor.

9           THE COURT:  Okay.

10          MR. McGLOTHIN:  And, Your Honor, the last one is just

11  the existence or content of the government's motions and any

12  order of this court in response to those motions.  I don't

13  think either side plans to bring those up, but we just put it

14  in here.

15          THE COURT:  All right.  Mr. Sweet?

16          MR. SWEET III:  I ask the court to just carry that.  I

17  don't really understand -- the only thing that could possibly

18  come up is if something might touch here from us trying to get

19  these records from the --

20          THE COURT:  I'll carry them to trial, now.  I don't

21  know, you know -- that's not specific enough here.

22          MR. McGLOTHIN:  Yes, Your Honor.

23          THE COURT:  I need to make some rulings so I will

24  carry it to trial.  And I'll only state that any such dispute

25  has to have relevance on the charge which is before the court.

1          MR. McGLOTHIN:  Yes, Your Honor.

2          THE COURT:  Anything more than that, then if it

3    doesn't bear on the facts allegedly present here and the

4    credibility of the witnesses relevant to this matter, then that

5    would be not relevant.

6          MR. SWEET III:  Yes, Your Honor.  I understand.

7          THE COURT:  Okay.  Now, Mr. McGlothin, does that

8    exhaust your list of matters to be submitted to the court?

9          MR. McGLOTHIN:  Yes, Your Honor, it does.

10          THE COURT:  Okay.  Now, do you have any more?

11          MR. McGLOTHIN:  No, Your Honor.

12          THE COURT:  Okay.  And, Mr. Sweet, do you have any

13    more?

14          MR. SWEET III:  No, Your Honor.  The next important

15    thing is this production, and we may be back asking the court

16    for in camera or the government may have to get the court

17    involved.  So as soon as we can know that, we can handle that

18    matter.  That's a pretty important matter to us.

19          THE COURT:  All right.  And, again, give me the date

20    when this shooting occurred.

21          MR. McGLOTHIN:  It was October 27, 2017, Your Honor.

22          THE COURT:  '17.

23          MR. SWEET III:  Yes, Your Honor, States.

24          THE COURT:  Okay.  So I ask that question, Mr. Sweet,

25    because I'm sure you're concerned with it.  Are you going to

 1 | handle any civil action allegedly owned by your client?

 2 |       MR. SWEET III:  The civil case?

 3 |       THE COURT:  Yes.

 4 |       MR. SWEET III:  I was associated by a person, Ed

 5 | Fletches, and, yeah, we were going to do the civil action at

 6 | this point.

 7 |       THE COURT:  Mr. Sweet, you do understand that the

 8 | thrust of Mr. McGlothin's action here in his motions is that

 9 | this is a criminal action only potentially related or only

10 | specifically related to the criminal charge here.

11 |       MR. SWEET III:  Yes, Your Honor.

12 |       THE COURT:  So any efforts to expand on that to derive

13 | discovery on a civil action will be met with the court's ruling

14 | that such efforts would not be appropriate.  So the court is

15 | not to be -- this court is not be utilized as a discovery venue

16 | for the civil matter but only to resolve the criminal issue.

17 |       MR. SWEET III:  Yes, sir.  I agree.

18 |       THE COURT:  So during the course of these proceedings,

19 | I will be endeavoring to maintain that distinction between what

20 | will be appropriate in the civil action as opposed to what is

21 | appropriate here in this criminal action which carries certain

22 | elements of proof.  And if something is outside those elements,

23 | then the court is going to rule that the matters sought are

24 | inadmissible because this is not a laboratory for the

25 | production of admissible evidence in the civil case or the

1  formulation of a theory in a civil case for nailing down of

2  witnesses on a potential forthcoming civil case but that here

3  we are only concerned with the major elements here.

4          And the only element that could be implicated by this

5  discovery dispute that is ongoing is element number 1, whether

6  this defendant possessed -- knowingly possessed a firearm

7  because the question as to whether he is a convicted felon I'm

8  pretty sure is not a hot-button issue here and that it's

9  pretty -- I will assume it's going to be pretty well

10  established that he's a convicted felon.

11          And then the third element is whether the firearm at

12  issue traveled in interstate commerce and I think that will be

13  easily shown since Mississippi does not have any munition plant

14  that manufactures guns and ammunition in the state of

15  Mississippi so that all of those items come from outside the

16  state.

17          So the only element of this particular criminal charge

18  which is being contested is whether he knowingly possessed a

19  firearm as charged.  And so in that vein, I'm allowing this

20  discovery to be developed just to see if it bears on that

21  issue.  But if it doesn't, then I'll have to rule that that

22  discovery would not bear on that particular issue.

23          But as to the way you described it a few moments ago

24  as to whether your client actually possessed a firearm, the

25  witnesses are saying that he did not, et cetera, and that you

1    have proof that you wish to elicit from those witnesses on the

2    particular point, then that's within the ballpark of dealing

3    with element number 1 on the particular point.

4         And then I imagine you're saying that -- not imagine

5    because you said it, that the police officers planted the gun.

6    That's your theory.  Is that right?

7         MR. SWEET III:  They planted or somebody did.  He

8    didn't have it.  I'm not going have to point to -- Your Honor,

9    what I'm going to do is I'm going to get these reports and I'm

10   going to test -- through the confrontation clause I'm going to

11   test their veracity and truthfulness.  I'm going to impeach

12   their statements about how this occurred.  There are

13   inconsistent statements.  The court knows -- the ATF agent told

14   the court in the pretrial hearing.

15        So we're going to go and test their veracity -- that's

16   correct, Your Honor -- and impeach him, and all the cases are

17   going to be about the credibility and whatever of those

18   officers.

19        Now, I don't expect that -- and what I don't -- one of

20   the actual shooters that you see, I don't think he's going to

21   come.  I think he's moved to Texas.  We -- so we're going to

22   have some issues, but that's going to be their case to test

23   these officers.

24        THE COURT:  Well, I think that's fair game on that

25   first element.

1           MR. SWEET III:  Yes, Your Honor.

2           THE COURT:  As long as we don't go beyond that in

3   getting into some matters that are basically civil in nature.

4           MR. SWEET III:  That's correct, Your Honor.  Your

5   Honor -- and I just say this to the court.  I'm aware, and I

6   know how the court runs this court.  I'm not going to go afoul.

7   If I do, it's not intentional.

8           However, Your Honor, everything that these officers

9   said, this investigation, any CSI, it's really important.  In

10  the pretrial hearing, for instance, this guy said he fit the

11  description.  Well, the guy gave them the name of the guy who

12  shot him.  He said his last name is Gator.  He didn't know his

13  last name.

14          Then they said -- come in and say that he fit this

15  description.  We don't have the description.  I can't be left

16  to take this officer's summary remember statement that he fit

17  the description of a guy that just got -- in the earlier

18  report, he gave them a name.

19      He said, *Who shot you*?

20      *Gator.*

21      *What's his last name.*

22      *I don't know his last name.*

23      Then two or three hours later, they come up and say, *Hey,*

24  *this guy fits the description.*  That doesn't make sense.  I'd

25  like to have the report earlier to see what description they

1    had.

2        Where I got this summary, the name Gator was from the

3    reports I have.  All I have are two officers' summaries of what

4    everybody said and everybody did.  That limits me to test the

5    officers who chased and witnessed him with a gun, who did the

6    shooting, their veracity.  Why they even came up here to him.

7    I mean, they had to have an explanation how he fit the

8    description of a guy earlier.  Did he?  What's the description?

9    Why you looking -- why you not at Gator's house?

10       I mean, look to me like you go to the police department and

11   say, *Hey, who's the guy that lives over here a/k/a Gator?*

12   *What's his name?  Where is he?  Why are you out in the*

13   *community shooting people?  You know his name.*  That's the kind

14   of stuff we're looking at Your Honor.  That tests their

15   veracity, their credibility.  It's very important to us, Your

16   Honor.

17           THE COURT:  Well, that's what an office of trials is

18   focused upon, the testing of facts and credibility.  So as long

19   as you're in those bounds, then I wouldn't see a problem.  And

20   Mr. McGlothin can also make his objection if he thinks that you

21   have overstepped because, again, you all know the facts of this

22   case better than I do.

23           MR. SWEET III:  Your Honor, I've tried a number case

24   before you.  I didn't always agree with your rulings, but I

25   always followed them.

1              THE COURT:  Yes, you did.  You agreed.  You just

2    didn't know at the time you were agreeing.

3              MR. SWEET III:  Yes, Your Honor.

4              THE COURT:  You were agreeing.  You know, you just

5    hadn't thought about it.  That's all.

6              MR. SWEET III:  That's what it?

7              THE COURT:  That's right  after you thought about it,

8    then you will say, yeah --

9              MR. SWEET III:  You were right.

10             THE COURT:  That's right.  Then there's a guy, blues

11   singer, Freddie Jay.  I don't know if you know him.  Plays

12   guitar.  He has a song where he says I thought about it.  I

13   thought about it.  I thought about it again.  Then I thought

14   about it one more time.  That's right.  And so every time he

15   sings the song, if I'm present, then he always points over to

16   me because I told him I like that because I thought about it.

17   So I know you thought about it.  That's right.  Okay, then.

18   Thank you much.

19             MR. SWEET III:  I just want the court to know I'm

20   going to stay within the bounds.  I do need this information.

21   Your Honor, I probably laid out more than I wanted to my plans

22   in this trial.  They kind of know my whole strategy now, but

23   hey, this is what it is.

24             THE COURT:  I don't think you gave him your whole

25   strategy.

1        MR. SWEET III:  Not all of it.

2        THE COURT:  I am sure you have got a hold card

3   somewhere.  But anyway, Mr. McGlothin, could you prepare the

4   order on this point on these matters and then submit it to

5   Mr. Sweet for his review and then after that submit it to the

6   court.

7        MR. McGLOTHIN:  Yes, Your Honor, I will.

8        THE COURT:  I will allow you until Friday to submit

9   all of these matters so that you can also include your

10  conversation with the City.

11       MR. McGLOTHIN:  Yes, Your Honor.

12       THE COURT:  And let me know what the City says about

13  the production of these documents.  Okay?

14       MR. McGLOTHIN:  Yes, Your Honor.  Just for clarity

15  purposes, Your Honor, we're going to come back to have -- after

16  we obtain all of those documents, are we going to come back to

17  have another hearing on those matters?

18       THE COURT:  Yes.  Before trial we'll have another

19  hearing as to the relevancy of those particular matters.  At

20  that time, then I would have had a chance to read those

21  documents and all others concerned would have had the same

22  opportunity.

23       MR. McGLOTHIN:  Yes, Your Honor.

24       THE COURT:  Already.  Thank you much.  All right.

25  Then.  Guys, I'll see you all later.

1               CERTIFICATE OF REPORTER

2

3        I, CHERIE GALLASPY BOND, Official Court Reporter, United

4   States District Court, Southern District of Mississippi, do

5   hereby certify that the above and foregoing pages contain a

6   full, true and correct transcript of the proceedings had in the

7   aforenamed case at the time and place indicated, which

8   proceedings were recorded by me to the best of my skill and

9   ability.

10        I certify that the transcript fees and format comply

11   with those prescribed by the Court and Judicial Conference of

12   the United States.

13

14        This the 29th day of May, 2019.

15

16                        s/ *Cherie G. Bond*
                          Cherie G. Bond
17                        Court Reporter

18

19

20

21

22

23

24

25